COMMONWEALTH *vs.* LABOR RELATIONS COMMISSION.

Suffolk. December 8, 1988. — February 13, 1989.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Commonwealth*, Collective bargaining. *Labor*, Collective bargaining. *Waiver*.

The Commonwealth has a duty to bargain with its employees' union relative to the implementation of St. 1983, c. 717, which amended G. L. c. 30, §§ 45 & 46, where by operation of G. L. c. 150E, § 7 (*d*), those provisions are superseded by the terms of the applicable collective bargaining agreement. [125-127]

The Labor Relations Commission correctly determined that a union had not, by virtue of inaction, waived its right to bargain with respect to terms and conditions of employment under a collective bargaining agreement. [127-128]

APPEAL from a decision of the Labor Relations Commission.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Joseph M. Daly* for the Commonwealth.

*Jean Strauten Driscoll* for the Labor Relations Commission.

NOLAN, J. The Commonwealth, acting through the Commissioner of Administration, appeals from a final order of the Labor Relations Commission (Commission), as provided in G. L. c. 150E, § 11. We transferred the case from the Appeals Court on our own motion. We now affirm the Commission's decision that the Commonwealth had a duty to bargain with the National Association of Government Employees (union), and that the union did not waive its right to bargain.

1. *Facts.* In August of 1984, the union filed charges with the Commission against the Commonwealth, alleging violations of two prohibited practices provisions of G. L. c. 150E, § 10(*a*)(1) and (5). The dispute arose over the implementation of St. 1983, c. 717, §§ 1 & 2 (c. 717), which amended G. L.

c. 30, §§ 45 & 46, enacted with emergency preamble, and effective on January 10, 1984.[1] Representatives of the Commonwealth and the union met on two occasions to discuss implementation of c. 717; a third meeting was cancelled by the union. An additional attempt to bargain was unsuccessful because a vacationing union attorney failed to respond within two weeks to the Commonwealth's letter proposing dates for an additional meeting.

The Commonwealth implemented the proposed salary plan. The union, in its two meetings with the Commonwealth's representatives, had objected to it. In response to the Commonwealth's implementation of the plan without further negotiation, the union filed charges of prohibited practices with the Commission. The Commission issued a complaint and held a formal hearing on February 1, 1985. In November, 1987, the Commission found in favor of the union.

The Commonwealth presents a two-fold argument: (1) that the Commission erred in determining that it had a duty to bargain with the union concerning implementation of c. 717; and (2) that even if such a duty existed, the union waived its right to bargain by neglecting to respond to the Commonwealth's letter proposing alternative meetings.

2. *Duty to bargain.* General Laws c. 150E, § 6, as inserted by St. 1973, § 1078, § 2, provides with respect to public employees that "[t]he employer and the exclusive representative shall meet . . . and . . . negotiate in good faith with respect to wages, hours, standards of productivity and performance, and any other terms and conditions of employment . . . ." Statute 1983, c. 717, provides for a new class of positions called "Professional data processing positions" and permits the Commissioner of Administration, after recommendation by the Personnel Administrator, to determine salaries for those positions annually. According to the preamble to c. 717, the legis-

---

[1] General Laws c. 30, § 45, addresses the office and position classification plan and pay plan for certain employees of the Commonwealth, and § 46 establishes rules and regulations for administration of such classification. Statute 1983, c. 717, by § 1, amended par. (9) of § 45, and, by § 2, added par. (5B) to § 46.

lative objective was "to immediately encourage the employment of data processing professionals." The first question for our determination is whether, by enacting c. 717, the Legislature intended to create an exception to the general rule that requires a public employer to bargain with the public employees' representative to resolution or impasse.

General Laws c. 150E, § 7(*d*), provides in part that, with respect to matters that are within the scope of negotiations under § 6, such as salaries, the terms of a collective bargaining agreement will prevail over certain enumerated statutes dealing with the same matters. Those enumerated statutes, generally, are "specific mandates to do or not to do something in connection with the terms and conditions of employment of public employees." *School Comm. of Newton* v. *Labor Relations Comm'n*, 388 Mass. 557, 566 (1983). Conversely, statutes not specifically enumerated in § 7(*d*) will prevail over contrary terms in collective bargaining agreements. See *Burlington* v. *Labor Relations Comm'n*, 390 Mass. 157, 163 (1983). There is no duty to bargain over the specific requirements of such statutes. *Newton, supra* at 566.

Statute 1983, c. 717, expressly amended G. L. c. 30, §§ 45 and 46, two sections which are listed in § 7(*d*) as giving way to the terms of a collective bargaining ageement. See G. L. c. 150E, § 7(*d*)(*k*).[2] Although G. L. c. 30, §§ 45 and 46, are included in the c. 150E, § 7(*d*), list of statutes which would give way to the terms of a collective bargaining agreement, the Commonwealth argues that c. 717's amendment of these sections nevertheless provides for a unilateral increase in the wage structure for certain personnel which is so inconsistent with collective bargaining that c. 717 cannot reasonably be construed as being subject to c. 150E. The Legislature must have intended, the argument goes, that the provisions of c. 717, like statutes excluded from c. 150, § 7(*d*), prevail over any collective bargaining agreement. That reasoning leads to the further conclusion, it is argued, that the Legislature intended that no duty to bargain exists relative to c. 717. We disagree.

---

[2] Appearing in St. 1977, c. 278, § 4.

This court must "give due weight to the experience, technical competence, and specialized knowledge of the agency . . . ." G. L. c. 30A, § 14(7). See *Quincy City Hosp.* v. *Labor Relations Comm'n*, 400 Mass. 745, 749 (1987). Furthermore, even without relying on that principle, we are content that the Commission's reasoning and result are correct. Because c. 717 amends G. L. c. 30, §§ 45 and 46, the Commonwealth cannot implement c. 717 without applying c. 30, §§ 45 and 46. Since §§ 45 and 46 are among the statutory provisions specifically enumerated in c. 150E, § 7($d$), their terms can be superseded by a collective bargaining agreement. Thus, as we have said previously, "plainly there is a right to bargain on topics covered by those [statutes enumerated in § 7($d$)] which involve 'terms and conditions of employment' (G. L. c. 150E, § 6)" (footnote omitted). *Labor Relations Comm'n* v. *Natick*, 369 Mass. 431, 438 (1976). There is no inconsistency between c. 717's provision that salaries be determined by the Commissioner of Administration, and the requirement that, before doing so, the Commissioner must bargain to resolution or impasse.

3. *Waiver by neglect.* We turn now to the issue whether the Commission properly determined, on the basis of substantial evidence in the record, that the union had not waived its right to bargain. See *School Comm. of Newton, supra* at 573.

A public employer has a duty to bargain in good faith and, short of impasse, it may not unilaterally implement changes to a mandatory subject of bargaining without negotiation. See *Southern Worcester County Regional Vocational School Dist.* v. *Labor Relations Comm'n*, 377 Mass. 897, 904 (1979); G. L. c. 150E, § 6. Indeed, implementation of changes without negotiation where there is a duty to do so may constitute a violation of G. L. c. 150E, § (10)($a$)(5). *School Comm. of Newton, supra* at 572. The Commonwealth argues that, even if it acted unilaterally with respect to implementing the c. 717 changes, the union, through its own neglect, waived its right to bargain.

The Commission found that the Commonwealth and union officials met on June 26, 1984, to discuss implementation of c. 717. Each party presented its position relative to the matter,

but they reached no resolution. The union requested additional information. The parties met a second time on July 2, 1984, when the union again requested additional information, which the Commonwealth promised to provide. The union cancelled a third meeting scheduled for the end of July. On August 3, the Commonwealth sent the union's representative a letter offering a number of dates on which the parties could meet and, in addition, stated that "we have suspended for the immediate future any proposed implementation of Chapter 717 to afford the union an opportunity to discuss our proposed implementation." The union representative, however, was vacationing at the time and did not respond to the Commonwealth's letter until August 17. Within a week thereafter, without an additional meeting between Commonwealth and union officials, Commonwealth employees began receiving their first salary payments under the terms of c. 717.

As to this issue, the Commission determined that the union had not, by virtue of inaction, waived its right to bargain. The Commonwealth's August 3 letter stated that it would suspend such implementation until further discussion with the union. Despite scheduling problems between the parties, "the Commonwealth was fully aware that the Union had never accepted the Commonwealth's proposals." Substantial evidence in the record supports that the Commission properly concluded that the Commonwealth violated G. L. c. 150E, § 10($a$)(1) and § 10($a$)(5). Even if the evidence of record might have warranted a contrary conclusion, we decline to substitute our judgment for that of the Commission. *School Comm. of Newton, supra* at 573.

*Order affirmed.*