Lauriat, J.
The plaintiffs, the National Association of Government Employees (“NAGE”), several officials of NAGE and two employees of the Commonwealth (collectively “NAGE”), brought this action against the Commonwealth of Massachusetts (“the Commonwealth”), and several state officials, challenging a statutory provision in the Commonwealth’s 1994 fiscal year budget which provides that the Commonwealth’s share of the group health insurance premiums for active state employees will be eighty-five percent, and which therefore increases state employees’ contributions to their health insurance premiums from ten percent to fifteen percent.
NAGE contends that the increase in the employees’ share of health insurance premiums violates the terms of three collective bargaining agreements between NAGE and the Commonwealth. These collective bargaining agreements contain a provision which requires that the Commonwealth pay ninety percent of the monthly premium for the state employees’ group health insurance plan and that each employee pay ten percent of that health insurance premium. NAGE seeks a declaratory judgment that the statutory provision which increases the employees’ share of health insurance premiums impairs the contractual rights of employees covered by the three collective bargaining agreements, in violation of the Contract Clauses of the federal and state Constitutions. The parties have submitted this action for determination by the court on a Statement of Agreed Facts.
DISCUSSION
The Commonwealth’s responsibility to make any payment towards its employees’ monthly health insurance premiums derives from G.L.c. 32A, §§8 and 14. General laws chapter 32A, Section 8 states in relevant part:
the commonwealth, on behalf of active and retired employees and their dependents, shall contribute no less than seventy-five per cent of the total monthly premium or rate applicable to said coverages . . . except that upon approval by way of an annual, or more frequent appropriation act, the commonwealth may contribute more than seventy-five percent but less than the entire total monthly premium or rate. Each appropriation act as maybe applicable, shall provide the necessary sum based upon the estimated monthly cost as required by section four and shall describe the ratio of contribution to be paid by the commonwealth and by the active and retired employees insured under the aforesaid sections . . . The aforesaid ratio shall continue until changed by a subsequent appropriation act and the aforesaid sum shall also include the commonwealth’s contribution of the total monthly premium or rate required for coverages contained in other sections of this chapter . . .
G.L.c. 32A, §8 also sets forth the Commonwealth’s obligations under its indemnity plan and preferred provider organization in accordance with Sections 4, 4A, 5, 6, 10B, 10C, and 12 of Chapter 32A. General laws chapter 32A, Section 14 governs the Commonwealth’s obligations for contracts for services of health care organizations, often referred to as HMO’s. Since 1990, the Commonwealth has been required to contribute the same percentage of the total monthly premiums or rates for the services of HMO’s, as it contributes for its other group health insurance. See G.L.c. 32A, §§8, 14; Statement of Agreed Facts, p. 4.
The three collective bargaining agreements between NAGE and the Commonwealth contain a contract provision addressing group health insurance contributions which states: “(T]he Commonwealth shall pay ninety (90) percent of the monthly premium rate for the Group Health Insurance Plan and each employee covered shall pay ten (10) percent of this premium rate for the type of coverage that is provided for him/her and his/her dependents under the Plan.” Article 13 of each collective bargaining agreement. The duration of the three collective bargaining agreements “shall be for the three-year period from July 1, 1990 to June 30, 1993.” Article 29 of each collective bargaining agreement. The duration clauses contained in the three collective bargaining agreements also provide that “[sjhould a successor Agreement not be executed by July 1, 1993, this Agreement shall remain in full force *23 and effect until a successor agreement is executed.” Id. Plaintiffs Amended Complaint, p. 5-6.
Since June 30, 1993, no new collective bargaining agreements have been executed. NAGE therefore asserts, and this court concludes, that the collective bargaining agreements which require the Commonwealth to pay a ninety percent share of the group health insurance premium are still in effect due to those agreements’ duration clauses.
The Commonwealth of Massachusetts’ budget for the fiscal year 1994 provides that the Commonwealth’s share of the group insurance premium for active state employees shall be eighty-five percent and mandates an increase in the state employees’ share of their health insurance premiums to fifteen percent.[1] St. 1993, c. 110, §2, Item 1108-5200 (“budget line item”). The budget line item was effective after July 31, 1993 and the contribution of health insurance premiums to be paid for retired employees remained at ninety percent. Id.
In September 1993, the Commonwealth implemented a deduction from government employees’ paychecks of fifteen percent of their monthly health insurance premiums. Plaintiffs’ Amended Complaint, P-6.
NAGE contends that the employees covered under the three collective bargaining agreements have suffered an impairment of contract because the budget line item, which mandates the percentage of contribution of health insurance premiums paid by the Commonwealth and by state employees, conflicts with the current collective bargaining agreements.[2] In analyzing a Contract Clause challenge, a three-part test must be applied to determine whether: (1) there has been a substantial impairment of a contract; (2) if the state law has, in fact, operated as a substantial impairment of the contractual relationship, whether it is “based upon a significant and legitimate public purpose such as the remedying of a broad and general social or economic problem”; and (3) whether the “adjustment of the rights and responsibilities [of the parties] is based on reasonable conditions and [is] of an appropriate character ” Fitchburg Gas and Elec. Light Co. v. Department of Pub. Utils., 395 Mass. 836, 852-53 (1985) (citing Energy Reserves Group. Inc. v. Kansas Power and Light Co., 459 U.S. 400, 410 (1983)); Defendants’ Trial Brief, p. 7-8.
First, the court must consider whether there has been a substantial impairment of NAGE’s contractual rights. Each of the three collective bargaining agreements contains an appropriation clause which states:
Appropriation by the General Court. The cost items[3] contained in this Agreement shall not become effective unless appropriations necessary to fully fund such cost items have been enacted by the General Court in accordance with M.G.L.c. 150E, Section 7, in which case, the cost items shall be effective on the date provided in the Agreement. The employer shall make such request of the General Court. If the General Court rejects the request to fund the Agreement, the cost items shall be returned to the parties for further bargaining.
Article 30 of the collective bargaining agreements. NAGE contends that Article 30 of the contracts is intended to apply only to the first year of the contract, not to each year of the collective bargaining agreements. Plaintiffs Second Memorandum of Law, p.3. NAGE asserts that if funds for the Commonwealth’s contribution to state employees’ health insurance premiums are appropriated in the first year of the collective bargaining agreement, they validate the entire three-year contract. Id.
The Commonwealth, however, asserts that NAGE did not have any legitimate expectations or reliance that their share of monthly health insurance premiums would remain at a ratio of 90/10, since any contractual term in the collective bargaining agreements providing the Commonwealth’s share of monthly insurance premiums was subject to appropriation each year, pursuant to G.L.c. 32A, §8. Defendant’s Trial Brief, p. 8-11.
General laws chapter 150E, Section 7(b) requires that an employer submit a request to the appropriate legislative body for an appropriation necessary to fund the cost items of a collective bargaining agreement.[4] The "employer” is “the Commonwealth acting through the commissioner of administration.” G.L.c. 150E, §1; Plaintiffs Third Memorandum of Law, p.1.
In Boston Teachers Union v. School Comm. of Boston, 386 Mass. 197, 204 (1982), the Supreme Judicial Court interpreted G.L.c. 150E, §7(b) to apply only to funds needed in the first year of the agreement, and determined that an appropriation funding the first year of the contract constituted an approval by the legislative body of the entire agreement. The Court concluded that “in order for §7(b) to be construed consistently with §7(a), authorizing contracts of three years duration, the statute must be read as contemplating an initial approval of the contract by the legislative body, followed by appropriations as a matter of course in the succeeding years of the contract.” Id. Therefore, the Court held that the city council approved the entire collective bargaining agreement when it appropriated the necessary funds for the first year of the three-year agreement, and a “clause . . . that provides for salary increases in the second or third years of the agreement is valid and enforceable, notwithstanding the provisions of St. 1909, c.486. Id. at 208-09.” The mayor and the city council were ordered to include in the city’s annual budget an appropriation of funds needed to pay the salary increases in the collective bargaining agreement. Id. at 210.
Similarly, this court concludes that when funds were appropriated for the Commonwealth’s contribu *24 tion of ninety percent of the state employees’ health insurance premiums in the first year of the NAGE/Commonwealth collective bargaining agreements, it agreed to fund incremental cost items[5] in the subsequent years of those contracts.
General laws chapter 150E, Section 7(d) provides that terms of collective bargaining agreements prevail over certain enumerated statutes. However, if the statute is not listed in Section 7(d), the statute will prevail over contrary terms in the collective bargaining agreement. See Cambridge v. Attorney General, 410 Mass. 165, 173 (1991) (acknowledging statutes listed by G.L.c. 150E, §7(d) are superseded by collective bargaining agreements); Commonwealth v. Labor Relations Comm’n, 404 Mass. 124, 126 (1989) (stating statutes not enumerated in G.L.c. 150E, §7(d) prevail over contrary terms in collective bargaining agreements); National Ass’n of Gov’t Employees v. Labor Relations Comm’n, 17 Mass.App.Ct. 542, 544 (1984) (noting if a statute is listed in G.L.c. 150E, §7(d) it cannot be superseded by a bargaining agreement); School Committee of Holyoke v. Duprey, 8 Mass.App.Ct. 58, 64 (1979) (declaring statute not listed in G.L.c. 150E, §7(d) preempts bargaining agreement provision).
The Group Insurance Commission statute, G.L.c. 32A, §8, is not one of the listed statutes in G.L.c. 150E, §7(d) and therefore G.L.c. 32A, §8 prevails. However, this court also finds that G.L.c. 32A, §8 is merely a description of the appropriation process, not an essential condition of the contract, and therefore the contract is valid.
A substantial “impairment [of contract] will be upheld if it is reasonable and necessary to serve important public purpose." See Nationwide Mutual Ins. Co. v. Commissioner of Ins., 397 Mass. 416, 423 (1986), citing United States Trust Co. v. New Jersey, 431 U.S. 1, 25 (1977). The Commonwealth asserts that the alleged impairment of contract here is justified by a legitimate public purpose in reducing health care costs to the Commonwealth. Defendant’s Trial Brief, p. 18. The total savings generated for the Commonwealth by the budget line item for fiscal year 1994 requiring an additional five percent from all state employees is in excess of $14,000,000. Statement of Agreed Facts, p. 7. Although the goal of controlling health care costs may be well intentioned, the state employees covered under the NAGE/Commonwealth collective bargaining agreements should not bear the burden of the Commonwealth’s fiscal difficulties. See, e.g., Massachusetts Community College Council v. Weld, Suffolk Sup. Ct. No. 91-2522 (Zobel, J.) (Feb. 16, 1994), where the Superior Court concluded that “the employer’s subsequent economic problems bear not at all on the obligation to pay for labor nor, for that matter, on any other term in the employment contract.”
The third prong of the Contract Clause analysis requires the court to determine “whether the adjustment of the ‘rights and responsibilities of contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation’s] adoption.’ ’’ Energy Reserves Group, Inc. v. Kansas Power and Light Co., 459 U.S. 400, 412 (1983), quoting United States Trust Co. v. New Jersey, 431 U.S. 1, 22 (1977). The increase in state employees’ contributions is estimated to amount to an additional $13/month for those covered by an indemnify plan, $9/month for those covered by an HMO, and $11/month for those covered by a preferred provider organization. Statement of Agreed Facts, p.7.
In Massachusetts Community College Council v. Weld, Suffolk Sup. Ct. No. 91-2522 (Zobel, J.) (Feb. 16, 1994), the Superior Court held that a mandatory employee furlough program violated a collective bargaining agreement and stated, “[finding the funds to meet its contractual obligations was entirely and exclusively the employer’s problem, which it could not shift onto the employees by unilaterally withholding bargained-for pay.” Similarly, this court finds that the budget line item in this case, which requires state employees to make an additional contribution to their future health care premiums in order to control health care costs, is not a reasonable measure. Accordingly, the statutory provision in the Commonwealth’s 1994 fiscal year budget which increases the state employees’ share of their health insurance coverage during the term of the present collective bargaining agreements, and any extensions thereof, is invalid.
ORDER
For the foregoing reasons, it is hereby DECLARED, ADJUDGED, and DECREED that the provision in the Commonwealth’s 1994 fiscal year budget increasing the health insurance premiums from ten percent to fifteen percent for those employees covered by the three NAGE/Commonwealth collective bargaining agreements is unconstitutional as an impairment of the obligation of contract, and therefore null and void, and judgment shall enter for the plaintiffs in this action.

 The budget line item provides in relevant part:
the Commonwealth’s share of the group insurance premium for active and retired state employees as provided in Section eight of chapter thirty-two A and for the purposes of Section fourteen of said chapter thirty-two A shall be ninety percent of the total monthly premiums and rates as established by the commission; provided further, that after July thirty-first, nineteen hundred and ninety-three, the commonwealth’s share of such premium for active state employees shall be eighty-five percent of such premiums and rates . . .
St. 1993 c. 110. §2. Item 1108-5200.

 U.S. Const. art. I, §10, cl. 1 states in relevant part: “No state shall. . . pass any . . . Law impairing the Obligation of Contracts . . .”

 General laws chapter 150E, Section 1 defines “cost items” as “the provisions of a collective bargaining agreement which require an appropriation by a legislative body.”

 General Laws, chapter 150E, Section 7(b) states in relevant part:
The employer, other than the higher education coordinating council or the board of trustees of the University of Massachusetts, the chief justice for administration and management of the trial court or the state lottery commission, shall submit to the appropriate legislative body within thirty days after the date on which the agreement is executed by the parties, a request for an appropriation necessary to fund the cost items contained therein; provided, that if the general court is not in session at that time, such request shall be submitted at the next session thereof. If the appropriate legislative body duly rejects the request for an appropriation necessary to fund the cost items, such cost items shall be returned to the parties for further bargaining.

 General laws chapter 150E, §1 defines “incremental cost items” as:
(T]he provisions of a collective bargaining agreement that require, in respect of any fiscal year, an appropriation by a legislative body that is greater than the appropriation so required in the preceding fiscal year; provided, however, that in respect of the first fiscal year or portion thereof during which an agreement has effect, “incremental cost items” shall mean the provisions of a collective agreement that require an appropriation by a legislative body of monies that are newly required by the employer to discharge the obligations arising under the terms of such agreement.